1:18-cv-0092-RBW

_____

# United States District Court
# for the
# District of Columbia

_____

**TEODORA A. SIMU**

*Creditor/Appellant*

**v.**

**SHARRA N. CARVALHO**

*Debtor/Appellee*

_____

## APPEAL OF DENIAL OF MOTION TO REMOVE TRUSTEE OF BANKRUPTCY CASE

_____

Matthew August LeFande
Attorney at Law PLLC
4585 North 25th Road
Arlington VA 22207
Tel: (202) 657-5800
email: matt@lefande.com
Attorney for the Appellant
DC Bar #475995

# Table of contents

I.    Table of Authorities...............................................................................iii

II.   Introduction...........................................................................................1

III.  Statement of Jurisdiction.......................................................................1

IV.   Statement of the Issues.........................................................................2

V.    Statement of the Case............................................................................3

VI.   Summary of the Argument....................................................................29

VII.  Argument...............................................................................................30

       1.    The Trustee intentionally ignored the evident value of the company and the ongoing cashflow of the assets of the company.....................................................................................31

       2.    Carvalho's receipt of shareholder distributions was illegal......44

       3.    Simu has established a *prima facie* case justifying removal and to sue Trustee Ross...................................................................55

VIII. Conclusion ...........................................................................................55

Certificate of Compliance............................................................................57

Certificate of Service....................................................................................57

## I.   Table of Authorities

## Cases

*Ackerman v. Schultz,*
    250 B.R. 22 (Bankr. E.D.N.Y. 2000) ...................................................41

* *In re Advanced Modular Power Sys.,*
    413 B.R. 643 (Bankr. S.D. Tex. 2009)..........................................41-42

*In re Albright,*
    291 B.R. 538 (Bankr.D.Colo. 2003)....................................................19

*Allentown Ambassadors, Inc. v. Northeast American Baseball, LLC,*
    361 B.R. 422 (Bankr. E.D. Pa. 2007).............................................42-43

*Aspen Skiing Co. v. Cherrett,*
    873 F.3d 1060 (9th Cir. 2017)................................................................2

*In re Bay Area Material Handling, Inc.,*
    1995 U.S. Dist. LEXIS 21598 (N.D. Cal. 1997).................................30

*In re Berry Publishing Services, Inc.,*
    231 B.R. 676 (Bankr. N.D. Ill. 1999)..................................................31

*In re Blue Stone Real Estate, Construction & Development Corp.,*
    392 B.R. 897 (Bankr. M.D. Fla. 2008)...........................................44-46

*In re Burgess,*
    234 B.R. 793 (D. Nev.1999)...........................................................42-43

*In re Cochise College Park, Inc.,*
    703 F.2d 1339 (9th Cir. 1983)..............................................................29

*Cases marked with an asterisk are those upon which we chiefly rely.*

*Connecticut General Life Ins. Co. v. Universal Ins. Co.,*
    838 F.2d 612 (1st Cir. 1988)...................................................................29

* *In re Copenhaver, Inc.,*
    506 B.R. 757 (Bankr. C.D. Ill. 2014)...........................................46-48

*In re DeLorean,*
    991 F.2d 1236 (6th Cir. 1993)...............................................................30

*Ford Motor Credit Co. v. Weaver*,
    680 F.2d 451 (6th Cir. 1982)..................................................................29

* *Gebhart v. Gaughan,*
    621 F.3d 1206 (9th Cir. 2010)....................................................35-36, 50

*In re Gorski*,
    766 F.2d 723 (2d Cir. 1985)...................................................................29

 *In re Hammond,*
    98 F.2d 703 (2d Cir.1938)..............................................................43-44

*In re Hartley,*
    50 B.R. 852 (Bankr. N.D. Ohio 1985).................................................30

*Hill v. Republic of Iraq,*
    328 F.3d 680 (D.C. Cir. 2003).................................................................2

*In re HSM Kennewick, L.P.*,
    347 B.R. 569 (Bankr. N.D. Tex. 2006).................................................43

*Hyman v. Plotkin*,
    967 F. 2d 1316 (9th Cir. 1992).........................................................35-36

*In re Kashani*,
    190 B.R. 875 (9th Cir. BAP 1995).........................................................31

*Cases marked with an asterisk are those upon which we chiefly rely.*

*Lassman v. Reilly*,
 393 B.R. 43 (Bankr. D. Mass. 2008).......................................30, 31, 32

*Lentz v. Myers*,
 486 B.R. 365 (Bankr. S.D. Miss. 2013)................................................5

*Leonard v. Vrooman,*
 383 F.2d 556 (9th Cir. 1967)...........................................................30-31

* *Lisowski v. Davis,*
 312 B.R. 681 (Bankr. D. Nev. 2004)..................................................30

* *In re Luckham*,
 464 B.R. 67 (Bankr. D. Mass. 2012)............................................34, 35

*In re Madison Management Group, Inc.,*
 137 B.R. 275 (Bankr. N.D. Ill. 1992)..................................................46

* *Massey v. Pappalardo,*
 465 B.R. 720 (B.A.P. 1st Cir. 2012) .............................................34, 50

*Mediofactoring v. McDermott,*
 802 F.3d 810 (6th Cir. 2015)...........................................................32-33

* *Old Republic Surety Co. v. Richardson,*
 178 B.R. 19 (Bankr. D.D.C. 1995)................................................43-44

* *In re Orton,*
 687 F.3d 612 (3d Cir. 2012).........................................................50, 51

* *In re Prince,*
 85 F.3d 314 (7th Cir. 1996).........................................................39, 40

*Rekerdres, et al. v. Seals,*
 68 F.3d 467 (5th Cir. 1995) ................................................................42

*In re San Juan Hotel Corp.,*
 71 B.R. 413 (D.P.R. 1987)..................................................................33

*Schwab v. Reilly,*
    560 U.S. 770 (2010)...........................................................34, 35, 48, 50

*Sheppard's Dental Centers, Inc. v. Southwest SDC, Inc.,*
    65 B.R. 274 (Bankr. S.D. Fla. 1986)....................................................41

*Sherr v. Winkler*,
    552 F.2d 1367 (10th Cir. 1977)................................................................5

*In re Spaulding Composites Co., Inc.*,
    207 B.R. 899 (9th Cir. B.A.P. 1997)....................................................43

*State of IIlinois, Dept. of Revenue v. Schechter*,
    195 B.R. 380 (N.D. Ill.1996)................................................................32

*In re Stoney*,
    445 B.R. 543 (Bankr. E.D. Va. 2011)...................................................35

*Taylor v. Freeland & Kronz*,
    503 U.S. 638 (1992).............................................................................32

*Cases marked with an asterisk are those upon which we chiefly rely.*

**Statutes**

11 U.S.C. § 323..................................................................................33

11 U.S.C. § 324..................................................................................30

11 U.S.C. § 327.............................................................................45, 46

11 U.S.C. § 330..............................................................................45-47

11 U.S.C. § 331..................................................................................45

11 U.S.C. § 350...................................................................................53

11 U.S.C. § 362...................................................................................42

11 U.S.C. § 363...............................................................................45-47

11 U.S.C. § 503...................................................................................47

11 U.S.C. § 522..............................................................................34, 50

11 U.S.C. § 541.........................................................................32, 40, 50

11 U.S.C. § 554...................................................................................45

11 U.S.C. § 701...............................................................................32-33

11 U.S.C. § 704.......................................................................31-32, 50

11 U.S.C. § 727..........................................................................12, 45

11 U.S.C. § 1101.................................................................................45

11 U.S.C. § 1107.................................................................................45

28 U.S.C. § 158...................................................................................2


D.C. CODE § 29-806.02........................................................................17

D.C. CODE § 29-807.02........................................................................10

D.C. CODE § 29-808.01........................................................................10

**Court Rules**

Fed. R. Civ. P. 26............................................................................21

Fed. Bank. R. 2014..........................................................................46

Fed. Bank. R. 2016..........................................................................47

Fed. Bank. R. 8002...........................................................................2

**Treatises**
Handbook for Chapter 7 Trustees.....................................................33-34

**Related cases**

*Simu v. Carvalho*, 2014 CA 2691 B (D.C. Sup. Ct.)

*Elite Insurance & Consulting Services, LLC v. Simu*, 2014 CA 4792 (D.C. Sup. Ct.)

*Simu v. Elite Insurance & Consulting Services,* 14-CV-1445 (D.C.)

*Simu v. Clark,* 15-OA-19 (D.C.)

*Simu v. Carvalho*, 15-CV-1407 (D.C.)

*Simu v. Carvalho*, 16-CV-272 (D.C.)

*Carvalho v. Simu*, 16-CV-328 (D.C.)

*In re Carvalho*, 15-646 (Bank. D.D.C.)

*Simu v. Carvalho*, 17-7077 (D.C. Cir.)

*Simu v. Carvalho*, 1:16-cv-02522-RBW (D.D.C.)

*Simu v. Carvalho*, 1:17-cv-01018-RBW (D.D.C.)

*Simu v. Carvalho*, 1:17-cv-02352-RBW (D.D.C.)

## II.    Introduction

On April 17, 2017, Creditor Teodora Simu moved to Remove Trustee Bryan Ross, ECF Docket in Bankruptcy Case 15-646 (herein, "Bank.") # 111, and for Leave to Sue the Trustee, ECF Docket (Bank.) # 112.  The Trustee's own testimony demonstrates that he took Debtor Sharra Carvalho's misrepresentations in her Petition and testimony at face value without the slightest investigation, made no effort whatsoever to inquire as to the merits of Creditor Simu's repeated and detailed allegations, and the voluminous evidence in support thereof, abandoned valuable property of the Estate without a required notice and a hearing, permitted Debtor Carvalho to run her business without notice or permission of the Court, and knowingly permitted the Debtor to receive, then illegally remove, tens of thousands of dollars from the Estate without notice or the Court's permission.  On November 29, 2017, the Bankruptcy Court denied Creditor Simu's motions, Appx236, and later granted Carvalho a discharge.

## III.    Statement of Jurisdiction

On November 29, 2017, the Bankruptcy Court denied Creditor Simu's motions to Remove the Trustee and for leave to Sue the Trustee.  Appx236.

1

Such an order is a final, appealable order. *Aspen Skiing Co. v. Cherrett*, 873 F.3d 1060, 1065 (9th Cir. 2017). The Appellant Creditor made her notice of appeal on December 11, 2017. Appx264. Such notice was timely under Bankruptcy Rule 8002 (a)(1). The District Courts of the United States have jurisdiction to hear appeals from such final orders under 28 U.S.C. § 158 (a) (1).

## IV.    Statement of the Issues

This Court reviews the Bankruptcy Court's decisions *de novo* on issues of law, clearly erroneous on issues of fact and abuse of discretion on issues that are committed to the bankruptcy judge's discretion. "[I]t is an abuse of discretion to apply the wrong standard or to consider an improper factor". *Hill v. Republic of Iraq*, 328 F.3d 680, 683 (D.C. Cir. 2003).

1.    The Estate Trustee's decision to abandon an asset of the Estate without notice and hearing violated the Bankruptcy Code. The Trustee cannot be excused by an claim of business judgment.

2.    The Estate Trustee's taking of funds of the Estate and paying the Debtor without notice and hearing violated the Bankruptcy Code. The

2

funds were clearly shareholder distributions and therefore income of assets

of the Estate and not any kind of post-petition earnings of the Debtor.

       3.     The Estate Trustee breached his fiduciary duties by accepting at

face value the representations of the Debtor's attorney while ignoring this

Creditor's overwhelming evidence to the contrary.

       4.     The Bankruptcy Court erred in not finding that the Estate

Trustee made bright line violations of the Bankruptcy Code which mandated

his removal.  The Court should have removed the Trustee and granted this

Creditor leave to sue the Trustee.


**V.      Statement of the Case**

       Just four days following the Creditor's Meeting, Estate Trustee Bryan

Ross made a report of no distribution in Sharra Carvalho's Bankruptcy Case.

ECF Docket (Bank.) # 25.  The Trustee stated that zero dollars in estate

property was abandoned.  *Id.*  The Trustee acknowledged that he was aware

of Simu's claims that Carvalho had fraudulently undervalued her interest in

Elite Insurance & Consulting Services, LLC, see Appx36, but later testified

he made no investigation whatsoever into those claims before making his

January 19, 2016 report and had examined none of the financial records of Elite.  Appx74-75.

Creditor Simu's evidence demonstrated Elite's Bank of America checking account received at least $245,255.76 in deposits in 2014.  Simu Ex. 13, ECF Docket (Adv.) # 18-13.  Elite's Bank of America checking account received at least $186,727.77 in deposits in 2015.  Simu Ex. 14, ECF Docket (Adv.) # 18-14.  Carvalho received at least $58,602.00 from Elite's Bank of America checking account in 2014.  Simu Ex. 13, ECF Docket (Adv.) # 18-13.  Carvalho received at least $73,169.16 from Elite's Bank of America checking account in 2015.  Simu Ex. 14, ECF Docket (Adv.) # 18-14.

Within thirty days of Carvalho testifying under oath that the company had "less than $2,000.00 in accounts receivable", Elite would receive at least $7,370.51 in payments to its Bank of America checking account.  Simu Ex. 27 at 3, 11, ECF Docket (Adv.) # 64-27.  On March 4, 2016, the Elite Insurance & Consulting Services, LLC federal tax return was completed, showing $60,709 in ordinary business income for 2015.  Simu Ex. 28 at 2, ECF Docket (Adv.) # 64-27; Simu Ex. 50, ECF Docket (Adv.) # 123-2.

Throughout 2016, Carvalho would remove tens of thousands of dollars from Elite and write company checks for personal expenses.  See ECF Docket (Adv.) # 133-1.  On June 10, 2016, Carvalho's attorneys falsely claimed that Carvalho was "receiving earnings from services performed by an individual debtor after the commencement of the case."  ECF Docket (Adv.) # 38 at 5 (quoting *Lentz v. Myers*, 486 B.R. 365, 388 (Bankr. S.D. Miss. 2013)).

On October 12, 2016, Simu received for the first time post-petition bank records of Carvalho and Elite Insurance & Consulting Services, LLC. Simu Ex. 26-27, ECF Docket (Adv.) # 64-1, 64-2.  Such statements demonstrated that Carvalho removed at least $53,531 from the company post-petition and transferred it to herself.  On October 20, 2016, Simu moved for a preliminary injunction to prohibit Carvalho from removing further funds from Elite.  ECF Docket (Adv.) # 64.

On October 22, 2016, Trustee Ross made an affidavit before the Bankruptcy Court.  Appx63.  Ross made no mention of his knowledge of Carvalho removing property from the Estate as alleged by Simu.  Ross made no claim that he did not object to Carvalho removing property from the Estate as alleged by Simu.  Ross made no allegation that he ever requested,

or ever received bank statements demonstrating the ongoing income to Elite
or the removal thereof by Carvalho.  Ross made no claim that Carvalho had
ever sought permission to remove money from the Estate.  *Id.*

On April 4, 2017, Trustee Ross filed another affidavit with the
Bankruptcy Court, now stating "I understood that Carvalho was continuing
to operate Elite, and I anticipated she would continue to be compensated for
operating Elite thereafter."  Appx65.  "On January 19, 2016, I issued a report
of no distribution in the case.  I did not seek to operate Elite and did not
require the Debtor to close Elite or liquidate its assets.  After issuing my
report of no distribution, I anticipated that the Debtor would continue to own
and operate Elite, and I did not object to her receiving funds from the
company."  Appx66.

On April 17, 2017, Creditor Simu moved to remove Trustee Ross as
the Estate Trustee, ECF Docket (Bank.) # 111, for leave to sue him for
breach of his duties, ECF Docket (Bank.) # 112, and to dismiss the
Bankruptcy Case for abuse, ECF Docket (Bank.) # 113.  Oppositions were
filed respectively by Debtor Carvalho and Trustee Ross.  ECF Docket
(Bank.) # 121-123.  On June 20, 2017, the Bankruptcy Court ordered
Creditor Simu to file a unified motion for summary judgment combining

6

these three pending, and yet already fully briefed, motions.  ECF Docket (Bank.) # 129 at 2.

Simu filed the unified motion on July 28, 2017.  ECF Docket (Bank.) # 132.  Within her motion, Simu demonstrated with uncontrovertable record evidence that:

1.     On January 5, 2016, Creditor Simu filed her adversary proceeding against Debtor Carvalho.  Trustee Ross was served with the Complaint on that date.  ECF Docket (Adv.) # 1.  The adversary Complaint informed the Trustee that Carvalho's claim that Elite Insurance & Consulting Services, LLC had a value of one dollar was false.  *Id*. at 8.  The adversary Complaint further informed the Trustee that "Carvalho continues to receive payments on debts owed to Elite Insurance & Consulting Services, LLC and convert them for her personal use."  *Id*. at 9.   The adversary Complaint further informed the Trustee of multiple causes why Carvalho should not receive a discharge in bankruptcy.  *Id*. at 9-17.

2.     On January 8, 2016, Simu moved for sanctions against Carvalho.  ECF Docket (Bank.) # 21.  Such motion was served upon Trustee Ross on that date.  Such motion expressly informed the Trustee that "Carvalho knew Elite Insurance & Consulting Services, LLC to have had

7

$231,336 in gross receipts for 2014." *Id*. at 6. Such motion expressly

informed the Trustee that "Carvalho knew that Elite Insurance & Consulting

Services, LLC reported $54,505 in income for 2014." *Id*. at 7.  Such motion

expressly informed the Trustee that this income figure was falsely reduced

by Carvalho by at least $97.072.  *Id*.  Such motion expressly informed the

Trustee that "Carvalho knew Elite Insurance & Consulting Services, LLC to

be worth at least $160,000." *Id*.  Such Motion further directed the Trustee to

Superior Court litigation documents to refute Carvalho's claims.  *Id*.

3.     At the January 14, 2016 Creditor's Meeting, Carvalho testified

before Trustee Ross as to Elite Insurance & Consulting Services, LLC, "The

business really has no money. Zero.  One dollar."  Appx41.  At this meeting,

the Trustee acknowledged his receipt and understanding of Simu's claims of

fraud against Carvalho.  Appx36.

4.     At the Creditor's Meeting, Trustee Ross was directly informed

by Carvalho's attorney that Elite Insurance & Consulting Services, LLC to

have gross receipts for 2015 of at least $149,000 and net income of $50,000.

Appx38.

5.     Only four days following the 341 Meeting, Trustee Ross made

his Report of No Distribution.  ECF Docket (Bank.) # 25.  Within that

8

report, he claimed no assets to have been abandoned.  Trustee Ross made no

attempt to investigate Simu's claims prior to filing this report.  Appx74-77.

6.      The following day, Creditor Simu moved for Relief from the

Automatic Stay.  ECF Docket (Bank.) # 26.  Trustee Ross was served with

the Motion on that date.  Such Motion expressly informed the Trustee of

Simu's intention to seize Elite Insurance & Consulting Services, LLC in

execution of judgment.

> The lawsuit resulting in this judgment included causes of action to
> account for and obtain Simu's one half equity interest in Elite
> Insurance & Consulting Services, LLC.

*Id*. at 15.

> Carvalho has no equity interest in this half of Elite Insurance &
> Consulting Services, LLC.

*Id*.

> According to Carvalho, her own interest in the Elite Insurance &
> Consulting Services, LLC is worth one dollar. Therefore, Carvalho
> has no equity interest in Elite Insurance & Consulting Services, LLC
> whatsoever.

*Id*.

> The subject of Simu's interest in Elite Insurance & Consulting
> Services, LLC is the subject of an existing proceeding in the District
> of Columbia Superior Court and would be soon heard in the District
> of Columbia Court of Appeals, but for the presence of the automatic
> stay.  Such litigation is essentially an *in rem* proceeding against

9

Simu's own interest in the company.  See D.C. Code § 29-808.01(a) ("a member may maintain a direct action in the Superior Court against another member, a manager, or the limited liability company to enforce the member's rights and otherwise protect the member's interests, including rights and interests under the operating agreement or this chapter or arising independently of the membership relationship.")

*Id*. at 16.

District of Columbia law provides that upon the application of a member such as Simu and establishment of good cause, the Superior Court may order dissolution and judicial supervision of the winding up of a limited liability company such as Elite Insurance & Consulting Services, LLC.  D.C. Code § 29-807.02.

*Id.* at 16-17.

This claim for Simu's interest in Elite Insurance & Consulting Services, LLC, a company not bankrupt and to which Carvalho holds no equity interest in half its ownership, is one subject of the Notice of Appeal which Carvalho now complains of violating the automatic stay.  A proceeding against a interest in a company which Carvalho does not own cannot violate the automatic stay.

*Id*. at 18.

7.     On January 27, 2016, Creditor Simu made an Objection to Debtor Carvalho's Claim of Exemptions.  ECF Docket (Bank.) # 32.  Trustee Ross was served with the Objection on that day.  Within Simu's Objection, Trustee Ross was again informed that "Elite Insurance & Consulting Services, LLC had $158,000 in gross receipts for 2015" and that "Elite

Insurance & Consulting Services, LLC [had] some one hundred commercial insurance clients supporting the company as an ongoing concern." *Id*. at 6. The Trustee was again informed that Carvalho's claim that the company had "nominal value" was false and that Simu claimed the company to be worth "at least $312,000 by ordinary income valuation methodology." *Id.*

8.      On February 25, 2016, the Bankruptcy Court lifted the stay for Creditor Simu to proceed with dissolution of Elite Insurance & Consulting Services, LLC to receive her share of the company.  ECF Docket (Bank.) # 55.  Such order was served upon Trustee Ross on that day.   ECF Docket (Bank.) # 59 at 3.

9.      On March 7, 2016, Creditor Simu moved to compel discovery from Carvalho.  ECF Docket (Adv.) # 12.   Such motion was served upon Trustee Ross on that date.  Such motion informed the Trustee that Carvalho was refusing to produce bank and financial records to Simu in violation of the Bankruptcy Code.

10.      On March 10, 2016, Carvalho's attorneys improperly moved to quash Creditor Simu's subpoena to Bank of America.

The present subpoena... is plainly part of an effort by Simu to harass the Debtor, to continue her oppressive and vexatious litigation practices, and to obtain records which likely have no relevance to any

11

legitimate claims in this proceeding. The subpoena should be
quashed.

ECF Docket (Adv.) # 28 at 2.

> In the present matter, Simu has already used subpoenaed bank
> statements in her attempt to support claims that the Debtor's discharge
> should be denied.  She asserts that a transfer of funds by Elite prior to
> the bankruptcy violated Section 727 (a)(2)(A) of the Bankruptcy
> Code, (despite the fact that Elite is not the Debtor), and that Elite's
> *post-petition* payments to the Debtor violate Section 727 (a)(2)(B),
> despite the fact that Elite's assets are not assets of the estate and that
> the transfers were made *to the Debtor*.  Apparently, Simu seeks
> further information about post-petition payments by Elite to the
> Debtor to support her spurious claim under 727 (a)(2)(B).

*Id*. at 3 (emphasis *sic*).

> Aside from her Section 727 (a)(2)(B) claim, post-bankruptcy
> payments from Elite to the Debtor have no possible relevance to the
> adversary proceeding or to the Debtor's bankruptcy case. Moreover,
> the Debtor submits that the subpoena represents part of Simu's
> continuing pattern of vexatious litigation behavior which has
> characterized her actions thus far in this adversary proceeding.

*Id*.

Such motion was served upon Trustee Ross on that date.  Such motion

informed the Trustee that Carvalho was now illegally interfering with the

production of bank records regarding Carvalho's personal finances and those

of Elite Insurance & Consulting Services, LLC.

11.     On March 15, 2016, Creditor Simu made a renewed Motion for Summary Judgment and served Trustee Ross with copies of all the attendant Exhibits.  ECF Docket (Adv.) # 18.  Such Motion demonstrated to the Trustee with competent evidence that "Carvalho received at least $73,169.16 from the Elite Insurance & Consulting Services, LLC Bank of America checking account in 2015." *Id*. at 7 (citing Simu Ex. 14).  Such Motion further demonstrated to the Trustee with competent evidence that Carvalho was removing cash on an ongoing basis from the Estate without the Court's or the Trustee's knowledge or consent.  *Id*. at 9-11.

Trustee Ross was served with a copy of the Complaint in the underlying Superior Court litigation as an exhibit on that date.  ECF Docket (Adv.) # 18-1.  The nature of Simu's interest in the company was particularly described by Carvalho during the Superior Court litigation, "the contracts that are the assets of Elite Insurance Company."  Simu Ex. 22 at 5.  ECF Docket (Adv.) # 18-22.

> MS. REYNOLDS: She withdrew on May 1st, and on May 2nd she and her new broker started taking our clients.  Therein is our problem.
>
> THE COURT: And there's no non-compete clause?

13

MS. REYNOLDS: There is not a non-compete, but we did have contracts with these people that have been breached. That's all we're complaining about.

MR. LEFANDE: Well, Your Honor --

MS. REYNOLDS: We're not complaining about her competing for new business.  We're talking about interrupting contractual relationships during the term of the contract.

*Id*. at 6.

...our assets are now depleted by 40 percent number but be that as it may, purpose of our testimony is going to be that defendants have, well Elite had contracts of covering insurance between major issuance companies and businesses and its assets were called the size the, of the insurance policy.  The significance of having the insurance policy is twofold. One, of course you get premiums.  You earn your income based on that contract.

*Id*. at 13.

Q.      Okay. And when you say that the contract is your asset, does anything come along with that contract?

A.      Yes, being a broker of record relies on the fact that you are the primary agent on that account.  The renewal policy for the following year is automatically given to the broker of record so if you are not the broker of record, you are not entitled to the renewal policy for the following year, which tends to be a discounted policy based on a previous claims history being positive.

Q.      And, and what is the in your insurance, what is the renewal rate on insurance policies for Elite based on broker of record?

14

> A.     Probably about 80 to 90 percent because of the fact that they
> are able to receive the renewal policy which is very much competitive
> in comparison to the other policies.

*Id*. at 15.

> Q.     And over the history of, of, of Elite what, how, how much a
> year do you  bring in in, in new business as opposed to repeat
> business?
>
> A.     I would say that
>
> Q.     Historically?
>
> A.     Historically that, that would vary.  We've only been in business
> for a, a little under four years and we have a book of business at about
> $1.27 million so I would assume that we are generating at least a
> good 3 or $400,000 per year based on those figures.
>
> Q.     And, and what percentage of your 1.2 is repeat, is, is renewal
> contracts do you believe?
>
> A.     I ' d say at least 60 percent.

*Id*. at  18.

Trustee Bryan Ross was served with a copy of this Superior Court

hearing transcript on this date.  ECF Docket (Adv.) # 18-22.  Trustee Ross

was also served with a copy of Creditor Simu's Superior Court Application

for a Charging Order.  ECF Docket (Adv.) # 18-5.   Within the application

for the charging order, Simu stated:  "Judgment Debtor Carvalho continues

to receive case disbursements of profits from Elite Insurance & Consulting

Services, LLC." Simu Ex. 5 at 2. ECF Docket (Adv.) # 18-5. Simu

demanded that Carvalho provide monthly financial and bank statements to

Simu, the Superior Court prohibit the disbursement of any Elite Insurance &

Consulting Services, LLC funds in an amount greater than $500 to any

person or entity without permission of the Court or Simu, and the Superior

Court prohibit the utilization of any alternate bank account or alternate

corporate entity by Carvalho without permission of the Court or Simu. *Id*. at

2-3.

12.     On March 23, 2016, Creditor Simu filed an Opposition to

Carvalho's Motion to Quash. ECF Docket (Adv.) # 20. Such Opposition

was served upon Trustee Ross on that date. Such Opposition again informed

the Trustee that "Carvalho removed an additional $3,015 from the Elite

Insurance & Consulting Services, LLC bank account, despite being

disassociated by action of District of Columbia law as a result of her

bankruptcy." *Id*. at 3 (citing Simu Ex. 14, page 4 of the December 2015

Statement).

13.     On May 24, 2016, Creditor Simu filed a Motion for

Reconsideration with the Bankruptcy Court providing a wealth of authority

demonstrating the money Carvalho was removing from Elite Insurance &

Consulting Services, LLC to be property of the Estate available for liquidation for the benefit of creditors, and that any removal of money from the company by Carvalho was illegal, particularly given her automatic disassociation from the company upon her bankruptcy under D.C. Code § 29-806.02 (7)(A).  ECF Docket (Adv.) # 34.  Trustee Ross was served with this Motion on that date.  *Id.* at 2.

14.    On August 5, 2016, Creditor Simu filed an expert report demonstrating Elite Insurance & Consulting Services, LLC to be worth more than $140,000.

> The Debtor's representations that the company's value is solely premised upon some office equipment and cash on hand, is completely inconsistent with her prior testimony that the value of the company in the existence of a multitude of insurance contracts which benefit the company by ongoing payment of commissions upon renewal of the policies.  The Debtor's prior representations that the company's value lies in this ongoing income stream perpetated by automatic renewal provisions in the contracts and with little or no effort of the company's members, are consistent with industry valuation practices of such insurance brokerages.  In light of the demonstrable significant annuity value of these contracts, the Debtor's present representations that the company is "essentially worthless" has no basis in fact.

ECF Docket (Adv.) # 44-1 at 1.

Trustee Ross was served with this report and all of the attendant documentation on that date.

17

14.    On October 12, 2016, Creditor Simu received for the first time post-petition bank records of Carvalho and Elite Insurance & Consulting Services, LLC.  Simu Ex. 26-27, ECF Docket (Adv.) # 64-1, 64-2.  Such statements demonstrated that Carvalho removed at least $53,531 from the company post-petition and transferred it to herself.  Trustee Ross was served with copies of those records on October 20, 2016.  ECF Docket (Adv.) # 64 at 3.

15.    On October 20, 2016, Creditor Simu moved for a preliminary injunction to prohibit Carvalho from removing further funds from Elite Insurance & Consulting Services, LLC.  ECF Docket (Adv.) # 64.  Trustee Ross was served with a copy of the Motion on that date.  *Id*. at 3

16.    On October 22, 2016, Trustee Ross made an affidavit before the Bankruptcy Court.  Appx63.  The Trustee made no mention of his knowledge of Carvalho removing property from the Estate as alleged by Simu.  The Trustee made no claim that he did not object to Carvalho removing property from the Estate as alleged by Simu.  The Trustee made no allegation that he ever requested, or ever received bank statements demonstrating the ongoing income to Elite Insurance & Consulting Services,

LLC or the removal thereof by Carvalho.  The Trustee made no claim that Carvalho had ever sought permission to remove money from the Estate.  *Id.*

17.     On November 7, 2016, Debtor Carvalho responded in opposition to Creditor Simu's Motion for Preliminary Injunction.  ECF Docket (Adv.) # 73.  Within her Opposition, Carvalho made no allegation that the Estate Trustee or the Court had provided her with permission to remove property of the Estate, *to wit*, remove money from Elite Insurance & Consulting Services, LLC.  *Id.*

18.     On November 15, 2016, the Bankruptcy Court entered an order granting in part Creditor Simu's Motion for Reconsideration.

> The bankruptcy estate is "entitled to receive the share of profits or other compensation by way of income and  the return of contributions to which that member would otherwise be entitled."  *In re Albright*, 291 B.R. [538, 540 n.7 (Bankr.D.Colo. 2003)]... any profit distributions from Elite that would have otherwise gone to Carvalho belonged to the bankruptcy estate after Carvalho filed her chapter 7 petition.

ECF Docket (Adv.) # 79 at 10.

Such Order was served on Trustee Ross on that date.

19.     On March 10, 2017, Debtor Carvalho again improperly moved to quash third party subpoenae.  ECF Docket (Adv.) # 119.  See also ECF Docket (Adv.) # 122.

> Insofar as Elite is wholly-owned by Ms. Carvalho, and Ms.
> Carvalho's sole income comes from Elite, harm to Elite results in
> harm to Ms. Carvalho.

ECF Docket (Adv.) # 119 at 2.

> This is especially so given that Carvalho has already produced
> documents that show precisely what monies she has received from
> Elite.

*Id*. at 5.

> As set forth above and as established in Carvalho's Affidavit, the
> subpoenas in this case would capture sensitive and confidential
> information about her clients and their policies.

*Id*.

> The information sought in Simu's subpoenas is highly confidential
> information of Elite... production of the information would disclose to
> her the names and addresses of Elite's clients, as well as their
> confidential information...

*Id*. at 2.

> Trustee Ross was served with this Motion on that date.

> 20.     On March 14, 2017, Debtor Carvalho's attorneys moved to

supplement their pending Motion to Quash, now attempting to prevent the

disclosure of Carvalho's and Elite's tax returns.

> A protective order must also be issued barring the discovery sought by
> the F.S. Taylor subpoena.  The request in the F.S. Taylor subpoena
> falls outside the limited scope of the additional discovery permitted in

this case for the same reasons that are set forth in the Motion to Quash, and those arguments are hereby incorporated by reference.

Moreover, the F.S. Taylor subpoena also falls outside the scope of discovery because it fails to comply with the proportionality requirements of Fed. R. Civ. P. 26 (b)(1).  Under the proportionality limitations, the discovery sought must be "proportional to the needs of the case" considering *inter alia* "the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Id.

ECF Docket (Adv.) # 122 at 4.

 Trustee Ross was served with this document on the date it was filed.

21.     At the March 17, 2017 hearing on Carvalho's Motion to Quash, Carvalho's attorneys argued that they were entitled or endeavoring to "hide" Carvalho's "client lists" from Simu.  Carvalho's Petition and Schedules asserted that she had no "Customer lists, mailing lists, or other compilations".  ECF Docket (Bank.) # 1 at 14.

22.     The 2016 1120S tax return for Elite Insurance & Consulting Services, LLC shows gross receipts to the company of $199,355.  Appx48. The return shows a net profit to the company of $67,267.  *Id*.  The 2016 1120S tax return for Elite no longer shows a $38,538.00 debt for legal fees. Appx52.  Compare ECF Docket (Adv.) # 65-2 at 5; Simu Ex. 17 at 5, ECF Docket (Adv.) # 18-17;  Simu Ex. 28 at 5, 9, ECF Docket (Adv.) # 64-3.

21

The 2016 K-1 from Elite Insurance & Consulting Services, LLC to Debtor Carvalho shows her share of the company's ordinary business income to be $67,267. Appx53. The K-1 shows that she received $64,647 in property distributions from the company in 2016. *Id.* The K-1 shows no expense to the company for any services rendered by Carvalho. Appx56. The 2016 D20 District of Columbia tax return for Elite Insurance & Consulting Services, LLC shows the company to have had no employees in 2016. Appx62. Trustee Ross was served with these tax returns on April 4, 2017. ECF Docket (Adv.) # 133-9.

23.     On April 4, 2017, Trustee Ross filed another affidavit with the Bankruptcy Court, now stating "I understood that Carvalho was continuing to operate Elite, and I anticipated she would continue to be compensated for operating Elite thereafter." Appx65. "On January 19, 2016, I issued a report of no distribution in the case. I did not seek to operate Elite and did not require the Debtor to close Elite or liquidate its assets. After issuing my report of no distribution, I anticipated that the Debtor would continue to own and operate Elite, and I did not object to her receiving funds from the company." Appx66.

22

24.     On May 10, 2017, Trustee Ross testified that he made no effort

to stop Carvalho from taking money from the company.

Q.     Do you have any expectations as to whether she would continue
doing that work?

A.     Once I filed my no distribution report, no asset report, I
assumed she would continue the operations.

Q.     Okay.

And prior to that, did you understand that she was continuing to
operate the company?

A.     I did.

Appx69.

THE COURT: ... Did you understand that Ms. Carvalho was going to
continue to operate the company?

THE WITNESS:  Judge, it was my assumption.  The Trustee files a
no distribution report. There are many, many cases where Debtors
have mom and pop operations, LLCs, and I think it's the Trustee's
expectation that once he files his no distribution report, the Debtor is
going to continue the operation.

THE COURT:  But shortly after the filing of the Petition Mr. Cohen
called you, correct, or you called him?

THE WITNESS: Yeah, I think we had some conversations.

THE COURT:  He represents today, that there were discussions about
Elite,  correct?

THE WITNESS:  Correct.

23

THE COURT:  And he represents that he described the character of the company as being a provider of insurance services, correct?

THE WITNESS:  Correct.

THE COURT:  And he represented that Ms. Carvalho was going to continue to operate the company, correct?

THE WITNESS:  Correct.

THE COURT:  And you don't dispute that?

THE WITNESS:  I had no problem or issue with that.

THE COURT:  And when somebody operates a company, are   they usually doing it for free?

THE WITNESS: Obviously not. I would assume that she was going to receive compensation that she had been receiving.

THE COURT: And is it fair to say whether Mr. Cohen formed an opinion as to whether you were of that view?

THE WITNESS: That is my opinion. That is my view.

THE COURT: Do you think Mr. -- Did you convey to Mr. Cohen, that you -- or did you acknowledge to Mr. Cohen, that you understood the Debtor would continue to operate the business?

THE WITNESS: Judge, I can't recall the exact substance of the conversation, but I did not believe that she would not continue the operation and receive compensation --

THE COURT: All right. Thank you.

THE WITNESS: -- post-petition.

24

Appx79-80.

25.    Carvalho has never received compensation "for operating

Elite".  She has solely received shareholder distributions of profits.  Appx53.

26.    The Bankruptcy Court never authorized the abandonment any

property of the Estate, including the assets and income of Elite Insurance &

Consulting Services, LLC.

27.    Trustee Ross never gave notice or sought a hearing to abandon

any property of the Estate, including the assets and income of Elite

Insurance & Consulting Services, LLC.

> And what was your expectation from -- as to what Ms. Carvalho
> would do with Elite after you filed the no distribution?
>
> A.    My assumption was that was tantamount to an abandonment by
> the Trustee, and the business would revert back to Ms. Carvalho and
> she was free to do whatever she wanted with the business.

Appx70.

> A.    I believe that when I filed my no distribution report, whatever
> interest the Debtor had as the sole member, I believe, reverted back to
> her.
>
> Q.    But there's a procedure.
>
> A.    I disagree.

Appx72.

25

28.    Trustee Ross never sought, and never received, Court approval to continue to run Elite Insurance & Consulting Services, LLC.

29.    Trustee Ross never made to the Bankruptcy Court and United States Trustee periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements.

30.    Trustee Ross never sought, and never received, Court approval to employ Debtor Carvalho to run Elite Insurance & Consulting Services, LLC.

> Q.    Who was it that would have been paying Carvalho between December 15th, 2015 and the present day, for her compensation for operating the company?
>
> MR. GOULD: Objection.
>
> THE COURT: Overruled.
>
> A.    I would assume she would be making the payments directly.
>
> BY MR. LEFANDE:
> Q.    Carvalho would be paying herself?
>
> A.    Correct.
>
> Q.    Out of what money?
>
> A.    I assume that some of the proceeds that are premiums she was receiving from Elite.

Appx81-82.

31.     Trustee Ross never sought, and never received, Court approval for payment of any actual, necessary costs and expenses incurred in preserving the Estate.

32.     Prior to the adversary trial, Trustee Ross never attended any hearing before the Court in either the Bankruptcy proceeding or the adversary case.

33.     Prior to responding to the pending motion to remove him, Trustee Ross never filed any response to any Motion filed by any party in either case.

34.     Trustee Ross never once contacted Creditor Simu or informed Simu of his purported assent to permit Debtor Carvalho to take income from Elite Insurance & Consulting Services.

35.     Trustee Ross never offered Elite Insurance & Consulting Services, LLC, or the assets thereof, to Creditor Simu in satisfaction of her claims.

36.     Trustee Ross made no attempt whatsoever to preserve property of the Estate for the benefit of Carvalho's creditors.

27

Despite a complete absence of evidence in rebuttal offered by Debtor Carvalho or Trustee Ross, the Trustee's testimony that he took the Debtor's misrepresentations in her Petition and testimony at face value, made no effort whatsoever to inquire as to Simu's allegations and the evidence in support thereof, that the Trustee abandoned valuable property of the Estate without a required notice and a hearing, permitted the Debtor to run her business without notice or permission of the Court, and knowingly permitted the Debtor to receive, then illegally remove, tens of thousands of dollars from the Estate without the Court's permission, the Bankruptcy Court ordered <u>another</u> evidentiary hearing on this motion.  See ECF Docket (Bank.) # 147.

On October 16, 2017, Creditor Simu challenged the need for another evidentiary hearing following a briefing on summary judgment in which no material facts were meaningfully disputed.

> It is indisputable that Carvalho's own taxes and statements to this Court demonstrate that she has only received shareholder profits from Elite Insurance & Consulting Services, LLC.  Trustee Ross certainly has offered no evidence to the contrary, in fact, he concedes exactly what Simu alleges, Carvalho continued to receive the profits of Elite, post-petition.  Given that these facts are not meaningfully in dispute, this scheduled "trial" serves only to give the Trustee another opportunity to sidestep what remains black letter law and prolong the unlawful conduct of the Debtor to this Creditor's detriment.

28

ECF Docket (Bank.) # 153 at 11.

On November 20, 2017, Trustee Ross admitted under oath that each of the affidavits he filed in this case were prepared for him by the Debtor's attorneys.  Appx137.  The Bankruptcy Court thereafter denied Creditor Simu's Motions to Remove the Trustee and for Leave to Sue the Trustee.  Appx236.  Simu timely appealed. Appx264.

## VI.    Summary of the Argument

"[F]ederal courts have uniformly held that bankruptcy trustees are subject to personal liability for the willful and deliberate violation of their fiduciary duties."  *Connecticut General Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 621 (1 st Cir. 1988) (citing *In re Gorski*, 766 F.2d 723, 727 (2d Cir. 1985); *In re Cochise College Park, Inc.*, 703 F.2d 1339, 1357 (9th Cir. 1983); *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 461 (6th Cir. 1982); *Sherr v. Winkler*, 552 F.2d 1367, 1375 (10th Cir. 1977)).  No party has been able to demonstrate that the Trustee's surreptitious abandonment of the Estate's interest in Elite Insurance & Consulting Services, LLC did not violate the Bankruptcy Code and eschewed his duties to the Bankruptcy

29

Court and to the Estate.  By permitting Debtor Carvalho to operate Elite and defalcate tens of thousands of dollars of its funds after her disassociation from the company, Creditor Simu has pled a *prima facie* case for removal. *Lassman v. Reilly*, 393 B.R. 43, 50 (Bankr. D. Mass. 2008).  Such conduct demonstrates the Trustee to have acted outside the scope of his authority and breached his fiduciary duty to preserve and liquidate the Estate.  *Id*.

## VII.   Argument

Under 11 U.S.C. § 324 (a), the Bankruptcy Court may remove a trustee for cause after notice and a hearing.  "[I]t remains for the court to determine what constitutes 'cause' on a case by case basis."  *In re Hartley*, 50 B.R. 852, 858 (Bankr. N.D. Ohio 1985).   If a Trustee has damaged the Estate, the only remedy is to remove and replace the Trustee.  *Lisowski v. Davis*, 312 B.R. 681, 685-686 (Bankr. D. Nev. 2004).

"It is well established that a bankruptcy trustee may not be sued without leave of the appointing court for actions taken in the scope of his or her authority."  *Lisowski*, 312 B.R. at 686 (citing *In re Bay Area Material Handling, Inc.*, 1995 U.S. Dist. LEXIS 21598, 1995 WL 747954, *3 (N.D. Cal.), *aff'd* 111 F.3d 137 (9th Cir. 1997); *In re DeLorean*, 991 F.2d 1236,

1240 (6th Cir. 1993); *Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir.

1967)).  "Before leave to sue a trustee may be obtained, the claimant must be

able to plead the elements of a *prima facie* case against the trustee."

*Lassman v. Reilly*, 393 B.R. at 50 (citing *In re Berry Publishing Services,*

*Inc.*, 231 B.R. 676 (Bankr. N.D. Ill. 1999) (citing *In re Kashani*, 190 B.R.

875 (9th Cir. BAP 1995))).


**1.     The Trustee intentionally ignored the evident value of the
         company and the ongoing cashflow of the assets of the company.**

Under the Bankruptcy Code, the Estate Trustee shall "(1) collect and

reduce to money the property of the estate for which such trustee serves, and

close such estate as expeditiously as is compatible with the best interests of

parties in interest; (2) be accountable for all property received... (4)

investigate the financial affairs of the debtor... (6) if advisable, oppose the

discharge of the debtor... (8) if the business of the debtor is authorized to be

operated, file with the court, with the United States trustee, and with any

governmental unit charged with responsibility for collection or

determination of any tax arising out of such operation, periodic reports and

summaries of the operation of such business, including a statement of

receipts and disbursements, and such other information as the United States

trustee or the court requires..."  11 U.S.C. § 704 (a).

    "A trustee 'cannot be held personally liable unless he acted outside the

scope of his authority as trustee, *i.e. ultra vires*, or breached a fiduciary duty

that he owed as the trustee to some claimant.'"  *Lassman v. Reilly*, 393 B.R.

at 50 (quoting *State of IIIinois, Dept. of Revenue v. Schechter*, 195 B.R. 380,

384 (N.D. Ill.1996)).  Trustee Ross has knowingly failed to collect and

preserve assets and income of the Estate for the benefit of creditors.  "When

a debtor files a bankruptcy petition, all of his property becomes property of

the bankruptcy estate."  *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642

(1992) (citing 11 U.S.C. § 541).  Since the onset of the Superior Court

litigation, Creditor Simu has diligently and invariably sought the assets and

income of Elite Insurance & Consulting Services, LLC in satisfaction of her

claims against Carvalho.  Trustee Ross has been repeatedly informed of this

fact through a multitude of filings in this Court.

    "The Bankruptcy Code provides for five different kinds of bankruptcy

cases. One of these arises under Chapter 7, which enables individuals to

discharge certain debts that they cannot afford in exchange for surrendering

certain non-exempt assets." *Mediofactoring v. McDermott*, 802 F.3d 810,

813 (6ᵗʰ Cir. 2015) (citing 11 U.S.C. § 701, *et seq*.).  Debtor Carvalho

elected to proceed in Chapter 7 and listed her interest in Elite Insurance &

Consulting Services, LLC as an asset of the Estate, albeit valued at one

dollar.

> A trustee is one to whom something is entrusted in order to keep or
> administer it. Said person is legally committed in trust and must
> administer for the benefit of a named beneficiary or for a purpose
> recognized as lawful by statute.  A trustee is one in whose hands the
> effects of another are attached by the trustee process.  He is a guardian
> of his ward's property.

*In re San Juan Hotel Corp.*, 71 B.R. 413, 417 (D.P.R. 1987).

> In a Chapter 7 proceeding, the beneficiary of the trust is not the

Debtor, it is the creditors intended to receive the trust property in liquidation.

> 11 USC 323 (a) provides that the chapter 7 trustee is the
> representative of the estate.  The trustee is a fiduciary charged with
> protecting the interests of all estate beneficiaries - namely, all classes
> of creditors, including those holding secured, administrative, priority,
> and non-priority unsecured claims, as well as the debtor's interest in
> exemptions and in any possible surplus property.  The trustee should
> administer the estate so as to maximize the distribution to the
> beneficiaries.  To represent the estate, the trustee must secure for the
> estate all assets properly obtainable under applicable provisions of the
> Bankruptcy Code, object to the debtor's discharge where appropriate,
> defend the estate against improper claims or other adverse interests,
> and must liquidate the estate as expeditiously as possible for
> distribution to creditors.

HANDBOOK FOR CHAPTER 7 TRUSTEES, Chapter 6, Section A. https://www.

justice.gov/ust/handbook-chapter-7-trustees [accessed April 14, 2017].

While Carvalho claimed the company to be exempt, it is only the one dollar value of the company she has named which was exempt. "[T]he language of § 522 (d)(1) clearly limits the Debtors' claimed exemption in the Property to a specific dollar amount..." *In re Luckham*, 464 B.R. 67, 72-73 (Bankr. D. Mass. 2012).

> Section 541 is clear that title to the equipment passed to Reilly's estate at the commencement of her case, and § 522 (d)(5) and (6) are equally clear that her reclamation right is limited to exempting an interest in the equipment, not the equipment itself. Accordingly, it is far from obvious that the Code would "entitle" Reilly to clear title in the equipment even if she claimed as exempt a "full" or "100%" interest in it (which she did not). Of course, it is likely that a trustee who fails to object to such a claim would have little incentive to do anything but pass title in the asset to the debtor. But that does not establish the statutory entitlement Reilly claims.

*Massey v. Pappalardo*, 465 B.R. 720, 726-727 (B.A.P. 1st Cir. 2012)

(quoting *Schwab v. Reilly*, 560 U.S. 770, 794 n.21 (2010)).

> We agree that "exemptions in bankruptcy cases are part and parcel of the fundamental bankruptcy concept of a 'fresh start'. . . . We disagree that this policy required Schwab to object to a facially valid claim of exemption on pain of forfeiting his ability to preserve for the estate any value in Reilly's business equipment beyond the value of the interest she declared exempt. This approach threatens to convert a fresh start into a free pass. . ."

*Massey*, 465 B.R. at 729-730 (quoting *Schwab,* 560 U.S. at 790).

34

Debtors assert that requiring them to "state the specific dollar amount in the Value of Claimed Exemption column will eviscerate the debtors' right to exercise the strategy approved by the Supreme Court." This argument has been raised by debtors in other districts, and has been categorically rejected as a fundamental misinterpretation of *Schwab*. This Court agrees that "it is a misreading of *Schwab* to conclude the Court has blessed the use of a designation such as '100% of FMV' [or, as here, '100% of Equity'] as a valid and unobjectionable scheduling of a claimed exemption value where the relevant exempting statute... expressly limits the exemption to a maximum cash value."

*In re Luckham*, 464 B.R. at 73 (quoting *In re Stoney*, 445 B.R. 543, 552

(Bankr. E.D. Va. 2011)).

But this is exactly what Trustee Ross has knowingly permitted

Carvalho to do. She has claimed the entire value of Elite Insurance &

Consulting Services, LLC to be exempt, but the true value of the company

vastly exceeded both her stated value and her statutory exemption amount.

The Trustee disingenuously accepted this figure of one dollar without any

investigation, but then proceeded to permit Carvalho to remove at least

$64,647 in shareholder profit distributions for 2016. Carvalho was solely

entitled to one dollar for her interest in Elite. *Gebhart v. Gaughan*, 621 F.3d

1206, 1211 (9th Cir. 2010) ("an exemption claimed under a dollar value

exemption statute is limited to the value claimed at filing.") "[W]hat is

frozen as of the date of filing the petition is the value of the debtor's

35

exemption, not the fair market value of the property claimed as exempt."
*Gebhart*, 621 F.3d at 1211 (citing *Hyman v. Plotkin*, 967 F. 2d 1316, 1320
n.9 (9th Cir. 1992)).

Prior to the Creditor's meeting on January 14, 2016, Trustee Ross had
actual and detailed notice from Simu's non-dischargeability complaint that
substantial money was flowing into Elite Insurance & Consulting Services,
LLC and that the company had significant value.  The Bankruptcy Court
incredulously excuses Trustee Ross from making any investigation into
Simu's claims, while accepting the representations of Attorney Cohen at face
value.  This was a marked violation of Trustee Ross's fiduciary duties.
Ross's duties were to Simu as a creditor.  As the paid advocate for the
Debtor, Cohen's interests were completely antagonistic to those of the
Estate.  To ignore Simu's voluminous evidence and simply adopt the false
claims of the Debtor violated Ross's duties to the Creditors and the Estate.

More incredulously, the Bankruptcy Court adopts the Debtor's false
claims in the face of overwhelming evidence that they were false, and
without the slightest evidence that they were true.  The clients of Elite
Insurance & Consulting Services, LLC spoke English.  Simu reviewed the
list of clients of the company and identified more than 200 pages of emails,

36

social media pages, other communications, and administrative agency

hearing transcripts where these clients interacted in English.  ECF Docket

(Bank.) # 143-1.  Judge Teel's repeated reference to this thoroughly refuted

false allegation, only ever expressed secondhand through Ross, tellingly

demonstrates that there is sparse justification for Ross's actions, other than

what actually occurred, the improper manipulation and influence of the

Debtor's attorneys, fellow members of the bankruptcy attorney cadre.

The Bankruptcy Court further ignored Simu's extensive and

competent authorities which demonstrated that Carvalho could never

transfer existing Elite clients to a new business, regardless of whether she

had a non-compete clause.  To do so would have required Judge Teel to

acknowledge the fundamental fraud which has permeated this bankruptcy

proceeding from its onset.  Debtor Carvalho concealed the true value of Elite

Insurance & Consulting Services, LLC from her Petition and Schedules, that

this value was the existing client relationships which drove repeat business

and maintained a continuous revenue stream for the company.  From less

than three weeks after Carvalho filed these papers, Creditor Simu railed

against this fraud, in the form of an adversary proceeding in 16-10001 and

also her January 8, 2016 Motion for Sanctions.  ECF Docket (Bank.) # 21 at 6-7.

Despite the Motion for Sanctions being exempt from the safe harbor service requirement under the Rule, the Bankruptcy Court refused to hear the motion because of a lack of safe harbor service ***and instead inexplicably sanctioned Simu for filing it***.  ECF Docket (Bank.) # 46, 68[1]  But this Motion for Sanctions was well founded.  Within her Petition, Carvalho intentionally omitted her client lists and professional licenses.  Her testimony at the Creditor's Meeting as to the source of value for the company dramatically departed from her testimony before the Superior Court.  Carvalho vastly undervalued her interest in Elite Insurance & Consulting Services, LLC, contrary to all of her previous representations, including her rejection of a $180,000 cash offer for the company.  Appx47.

Despite Carvalho's repeated representations and sworn testimony that it was her clients and the insurance contracts that were the assets of the company, she simply denied this when valuing the company.  It was the goodwill and existing client relationships which were the true value of the

_____

[1] This was no oversight by Simu or the Court.  Simu specifically asserted the exemption to safe harbor service in the preamble to her Motion.

company and it was these assets which could not be transferred away from the Estate without violating bankruptcy law.

Trustee Ross claimed, again in lockstep with the Debtor and her multitude of attorneys, that the absence of a non-compete clause between the Debtor and Elite Insurance & Consulting Services, LLC rendered Elite worthless. The theory was that the Debtor would somehow be permitted to transfer all of the clients and contracts from Elite to a new entity if Elite were to be sold.  ECF Docket (Bank.) # 183 at 5.  This is wholly unsupportable, as those assets are still what comprise the Estate's pre-petition assets, and the Debtor's utilization of them would again generate profits of the assets of the Estate and again, be property of the Estate.

> The present value of stock in a company can be separated into what portion of the stock's value is attributable to which of the company's assets.  Some of the value of stock may flow from the company's physical assets, such as equipment.  Some of the company's future cash flows may be attributable to the company's human capital--its employees' skills and labor.  And some of a stock's value may derive from the company's intangible assets, such as a trademark or general "goodwill."  Goodwill is an intangible asset that represents the ability of a company to generate earnings over and above the operating value of the company's other tangible and intangible assets.  It often includes the company's name recognition, consumer brand loyalty, or special relationships with suppliers or customers.

*In re Prince*, 85 F.3d 314, 322 (7th Cir. 1996).

39

The Debtor recognized this goodwill in describing the value of Elite Insurance & Consulting Services, LLC to the Superior Court in the TRO hearing on August 13, 2014.  Simu Ex. 22 at 15-18, ECF Docket (Adv.) 18-22.  Were the Debtor to attempt to re-capture this goodwill following the sale of Elite by the Trustee, she would, as she has been all along, be converting assets of the Estate illegally.

> The Princes contend, as the second component of their argument, that they should only have to pay into the creditors' fund the $7,500 of the purchase price that represents the value of the corporation's physical assets.  They argue that Dr. Prince's goodwill is, like his skills, training, and dental license, a personal attribute--that his goodwill is merely part of his human capital and therefore must be excluded from the bankruptcy estate under the § 541 (a)(6) earnings exception. In an important sense, however, Dr. Prince's goodwill is unlike his skills, his schooling, or his dental license.  These components of Dr. Prince's human capital can only manifest their value by increasing the worth of his future labors.  Dr. Prince's innate physical ability, his personality, or his professional degree increase the market value of his services, but they cannot be sold to another orthodontist; they have value only as attributes of Dr. Prince.  On the other hand, Dr. Prince's goodwill, like the practice's physical equipment, can be sold and transferred, and once sold and transferred can generate value for another orthodontist.  Although the mechanism of using his best efforts to transfer his patients' loyalties to Dr. Clare and then securing the transfer with a covenant not to compete is not as simple as signing over title to a physical asset, the functional effect is the same. Dr. Prince could sell and deliver his goodwill to Dr. Clare, and Dr. Clare would then reap the value of the asset.  Thus, Dr. Prince's goodwill is not intrinsically part of his human capital, but rather is a separate intangible capital asset of the practice, like a trademark would be.

40

*In re Prince*, 85 F.3d at 323 (footnote omitted).

"The value of a professional practice owned by a debtor as of the commencement of a bankruptcy case is attributable to many different assets... some of its value may derive from the practice's intangible assets, such as goodwill." *West v. Hsu* (*In re Advanced Modular Power Sys.*), 413 B.R. 643, 667 (Bankr. S.D. Tex. 2009) (quoting *Ackerman v. Schultz* (*In re Schultz*)*,* 250 B.R. 22, 35 (Bankr. E.D.N.Y. 2000) (internal citations omitted) and citing *Sheppard's Dental Centers, Inc. v. Southwest SDC, Inc.* (*In re Sheppard's Dental Centers, Inc.*)*,* 65 B.R. 274, 278 (Bankr. S.D. Fla. 1986) (setting aside transfers made depriving the estate of assets without fair consideration, including assets such as "goodwill, telephone numbers used... prior to [the] proceedings, and other similar intangible property")).

> The property that Hsu converted for use by AMP Services is considered property of the estate, and its continued use demands compensation.  The Defendants had a duty to use these assets for the benefit of AMPS and the creditors of AMPS.  Rather than using the assets to maintain the business of the already formed AMPS, the Defendants chose to incorporate a new business--AMP Services--and then provide the same services as AMPS had been providing.  Despite their duty to AMPS, the Defendants chose to use the intangible assets to profit AMP Services instead. These acts are in direct contradiction of Hsu's duties as a corporate officer not to usurp the corporate opportunities of AMPS.  Because the Defendants diverted these assets away from the Debtor's estate, the estate lost the potential to generate

income, and therefore the Debtor was injured by Hsu's breach of his
fiduciary duty.

*In re Advanced Modular Power Sys.*, 413 B.R. at 667-668.

> The new business, AMP Services, occupied the same office space as
> AMPS, used AMPS's telephone number, vendor information,
> customer lists, and performed the same or similar services for
> customers that had previously done business with AMPS.  The timing
> of the incorporation of AMP Services, as well as the letter sent to
> AMPS's customers referencing a "re-organization" and other
> statements, indicate an overlap in the companies' which supports a
> finding of conversion.  *See Rekerdres, et al. v. Seals* (*In re Rekerdres
> & Rekerdres Ins. Agency, Inc.*), 68 F.3d 467 (5th Cir. 1995) (finding a
> defendant using customer lists, similar name, and same office space in
> starting a new company converted the assets of the debtor company).
> Indeed, the Defendants' actions made it very difficult, if not virtually
> impossible, for any of AMPS's tangible and intangible assets to be
> liquidated for the benefit of the Debtor's bankruptcy estate.  Therefore,
> the Court concludes that the Defendants' actions constitute
> conversion, and the Defendants are liable for damages caused by the
> conversion of AMPS's property interests.

*Id*. at 669.

This obviously contrived *ex post facto* rationalization offered for the

first time at trial remains a legal impossibility.  As Debtor Carvalho would

be prohibited from shifting her customer lists, her professional licenses, and

the existing contracts into a new company, they could not be defalcated from

Elite Insurance & Consulting Services, LLC, with or without a non-compete

covenant.  "Section 362 (a)(3) is generally viewed as a provision designed to

42

prevent the 'dismemberment' of the bankruptcy estate until the bankruptcy process permits either a financial reorganization of the debtor or an orderly liquidation of the assets of the bankruptcy estate." *Allentown Ambassadors, Inc. v. Northeast American Baseball, LLC* (*In re Allentown Ambassadors, Inc.*), 361 B.R. 422, 435-436 (Bankr. E.D. Pa. 2007) (citing *In re Burgess*, 234 B.R. 793, 799 (D. Nev.1999); *In re Spaulding Composites Co., Inc*., 207 B.R. 899 (9th Cir. B.A.P. 1997); *In re HSM Kennewick, L.P.*, 347 B.R. 569, 572 (Bankr. N.D. Tex. 2006)).  Trustee Ross's claim to the contrary is spurious, and in adopting it without the slightest rebuttal of these authorities, the Bankruptcy Court has made a readily reversible error of law. "A trustee is charged with the knowledge of the law and that only innocent mistaken knowledge of the facts will lead to dischargeability..." *Old Republic Surety Co. v. Richardson* (*In re Richardson*), 178 B.R. 19, 28 (Bankr. D.D.C. 1995) (citing *In re Hammond*, 98 F.2d 703, 705 (2d Cir.) *cert. denied*, 305 U.S. 646 (1938)).

> Implicit in [the debtor's] argument is the assumption that Hammond did not know, and is not chargeable with knowing, the rule of law forbidding him to take over for his own profit a contract of a solvent corporation, even when the corporation is financially unable to perform it.  But this assumption is unwarranted; he is chargeable with knowledge of the law.  The character of the liability imposed upon a fiduciary for appropriating property of his *cestui* in violation of his

> duty is the same whether he has actual knowledge that the law imposes the duty or is merely charged with such knowledge. In either event the appropriation is intentional and, since it is unlawful, it is such a "misappropriation" as, in our opinion, excepts the liability from release by a discharge in bankruptcy.

*Id.* (quoting *In re Hammond*, 98 F.2d at 705).

Debtor Carvalho's false argument in this regard at trial completed the circle. This Creditor repeatedly demonstrated Carvalho failed to disclose her client lists and professional licenses, and completely misrepresented the nature of the value of the company in her Petition. This Creditor repeatedly pointed to these misrepresentations as manifestations of the Debtor's fraud, because this was an intentional concealment of the true assets of the company, those same assets Carvalho now claims she could move over to a new company with no impediment by the pendency of her bankruptcy. The Debtor's fraud from the onset, and the Trustee's complicity, is herein demonstrated and irrefragable.

**2.      Carvalho's receipt of shareholder distributions was illegal.**

"The Bankruptcy Code is laden with express requirements of and limitations on business operations of a debtor in possession, not to mention discretionary requirements and limitations that may be imposed by the

bankruptcy court where permitted." *In re Blue Stone Real Estate,*

*Construction & Development Corp.*, 392 B.R. 897, 903 (Bankr. M.D. Fla.

2008).[2]  The distribution of shareholder profits back to Debtor Carvalho

beyond her exemption limits obviously violated § 727 and Trustee Ross

fulfilled none of his obligations to the Court prior to allowing Carvalho to be

"compensated" for running the company.[3]

> Generally, trustees may employ attorneys, accountants, appraisers,
> auctioneers, and other professionals after obtaining court approval. 11
> U.S.C. § 327 (a). Those professionals are then entitled to reasonable
> compensation and reimbursement for actual expenses which may be
> awarded after parties in interest have received notice and have had an
> opportunity to be heard.  11 U.S.C. § 330 (a)(1).  Professionals
> employed under § 327 may file requests for interim compensation on
> a quarterly basis. 11 U.S.C. § 331.  Although these provisions refer
> specifically to the employment of professionals by trustees, the
> provisions apply equally to the employment and compensation of
> professionals by debtors in possession.  See 11 U.S.C. §1107 (a).  In

---

[2] Carvalho's ongoing operation of Elite Insurance & Consulting Services,
LLC is not a debtor in possession, as we are in the wrong chapter.  See 11
U.S.C. § 1101.  Yet, Trustee Ross's fast and loose reading, or complete
eschewing, of the Code has turned the present situation into exactly that.
Carvalho was so emboldened by the complete lack of supervision and
complicity by Trustee Ross over the course of 2016 that she later claimed
Elite was not a part of the Estate whatsoever.  ECF Docket (Adv.) # 132-1 at
6.

[3] The Bankruptcy Court in no way authorized the abandonment of Elite
Insurance & Consulting Services, LLC.  See 11 U.S.C. § 554.  See also 11
U.S.C. § 363 (f).  All evidence demonstrates the company to be a profitable
ongoing concern, as it always has been.

order to be employed, professionals must not hold an interest adverse
to the estate, must be disinterested, and must make a formal
application to be employed which includes a verified statement
regarding the person's connections to other persons or entities
involved in the case.  11 U.S.C. § 327 (a); Fed. R. Bankr. P. 2014 (a).
Compensation is awarded based on a variety of factors, including time
and rates, and upon the filing of a detailed application.  11 U.S.C. §
330 (a)(3); Fed. R. Bankr. P. 2016.

*In re Copenhaver, Inc.*, 506 B.R. 757, 761 (Bankr. C.D. Ill. 2014).

These standard or "normal" processes for employment do not always
fit neatly within the circumstances of particular cases.  The person to
be employed might not be a professional or might not be fully
disinterested and, therefore, not eligible to be employed under § 327.
To address such circumstances, the Debtor suggests that employment
may be allowed under § 363 (b) rather than § 327 and claims that an
extensive line of case law supports the use of § 363 (b) for the
retention of consultants and restructuring officers.

*Id.*

[T]he use of § 363 (b) as authority for allowing employment has also
been met with criticism as an improper method of circumventing the
otherwise applicable requirements of the Code and Rules.  See*, e.g.,
In re Blue Stone Real Estate, Constr. & Development Corp.*, 392 B.R.
897, 906-07 (Bankr. M.D. Fla. 2008).  And of particular concern is the
suggestion that retention under § 363 (b) may limit a court's oversight
of the conduct and compensation of the employed person.  *Id.* at 907,
n.14.  "Generally, financial advisors, workout specialists and
consultants are, for the purpose of Section 327 of the Bankruptcy
Code, 'professionals.'"  *In re Madison Management Group, Inc.*, 137
B.R. 275, 283 (Bankr. N.D. Ill. 1992).  When employment is proposed
for one of these positions, the procedures required by § 327 should be
followed in order to further the policies of ensuring that employed
persons are impartial and that the costs and administrative expenses of

a case remain subject to judicial oversight. *Blue Stone Real Estate*, 392 B.R. at 907, n.14.

*Id*. at 762.

Here, § 363 (b) is being used to employ a person who is not disinterested and has potential conflicts. It makes little sense to suggest that a mandatory result of the approval of such employment is less supervision and control by the Court and other interested parties than would occur if the employed person were disinterested and had no potential conflicts. The Code and Rules do not require such a result.

*Id*. at 763.

The Debtor argues that because the employment here is not proposed under § 327 and, therefore, the fee application requirements of § 330 will not apply, no fee application requirements apply. But the requirements under the Code and Rules for obtaining approval for the payment of post-petition expenses, including fees, are broader than the provisions of § 330. All expenses for which administrative priority is sought must be approved after notice and hearing. 11 U.S.C. § 503 (b). This includes not only requests under § 330, but requests for payment of any actual and necessary expenses of preserving the estate. 11 U.S.C. § 503 (b)(1)(A). And transfers to officers, managers, and consultants made outside of the ordinary course of business are specifically required to be "justified by the facts and circumstances of the case" to be allowed and granted administrative expense priority. 11 U.S.C. § 503 (c)(3). The requirement to file an application for compensation applies to any person or entity that seeks compensation for services or reimbursement of expenses. FED. R. BANKR. P. 2016 (a).

*Id*.

The Debtor is correct that the § 330 fee application requirements apply only to the specific types of employment referred to at § 330 (a)

(1).  But the Debtor incorrectly assumes that § 330 is the only basis
for requiring a fee application and ignores the clear applicability of §
503 and Rule 2016 to the employment requested here.

*Id*. at 764.

Trustee Ross willingly gave Carvalho the "free pass" categorically

prohibited by *Schwab* and its progeny.  In turn, the Trustee ignored Creditor

Simu's repeated demands that the company be turned over to her to satisfy

her judgment.  No administrative costs would have been borne by the Estate;

Simu was ready and available to run the company and receive those

proceeds directly.  The Trustee has inexplicably failed to collect and reduce

to money the property of the Estate for which he serves, and failed to

expeditiously close the estate in the best interests of the creditors, he has

failed to account for all property received, he has failed to investigate the

financial affairs of the Debtor after Simu brought such fraud to his attention,

he has failed to provide periodic reports of the operation of Elite Insurance

& Consulting Services, LLC to the Court and to the United States Trustee,

and he has failed to obtain any of the permissions necessary to permit the

Debtor to receive profits or compensation from the company or to pay any

kind of administrative expenses from the funds of the Estate.  The Trustee

has failed to safeguard and account for the Estate funds and assets, and the

48

Trustee has delivered substandard performance of general duties and case

management.  Creditor Simu has been seriously injured as a result.[4]

The Bankruptcy Court again attempts to excuse Trustee Ross's

inaction with a series of *ex post facto* rationalizations, none of which have

evidence in the record beyond some self-serving affidavits.  The repeated

theme herein is that the Bankruptcy Code specifically requires notice and a

hearing before property of the Estate may be abandoned or expended.  Not

only did Trustee Ross not provide notice of his intention to abandon Elite

Insurance & Consulting Services, LLC back to the Debtor weeks after the

filing of her Petition, he allowed tens of thousands of dollars to flow back to

her, while at the same time, making misleading statements regarding his

position and the status of the Estate.

In again excusing the inaction of Trustee Ross, the Bankruptcy Court

claims unspecified administrative expenses that might have been incurred in

---

[4] Contrary to the Bankruptcy Court's repeated criticism, Creditor Simu had no responsibility whatsoever to chase after the openly hostile Trustee Ross to do his statutory duties, ***it was Ross's duty to investigate claims and administer the Estate for the benefit of the Creditors***.  As Simu and her attorney suspected from the onset, Ross was indeed acting in collusion with the Debtor's attorneys, and any efforts to bring him back into compliance with the law would have been futile.  Simu's limited resources instead were best expended upon the pending non-dischargeability action.

the Trustee actually performing his statutory duties.  The Trustee claimed he

would have needed to expend significant amounts of Estate funds for

attorneys to litigate over the interests of Elite Insurance & Consulting

Services, LLC.  What is profoundly absent from this claim or the

Bankruptcy Court's adoption thereof is an identification of what claims

would be litigated and what parties would be litigating them.  Debtor

Carvalho identified Elite Insurance & Consulting Services, LLC as a asset of

the Estate and claimed a fair market value of one dollar.  ECF Docket # 1 at

11, 18.  Carvalho's reclamation right was then limited solely to exempting *a*

*one dollar interest* in Elite Insurance & Consulting Services, LLC, not the

company itself. *Massey*, 465 B.R. at 727 (quoting *Schwab*, 560 U.S. at 794).

See also *Gebhart*, 621 F.3d at 1211 ("an exemption claimed under a dollar

value exemption statute is limited to the value claimed at filing"); *In re*

*Orton*, 687 F.3d 612, 617-618 (3d Cir. 2012) ("exemptions under § 522 (d)

(5) are presumed to preserve a debtor's 'interest' in an asset rather than the

asset itself; a debtor seeking to retain more than an 'interest' must indicate

that fact unambiguously in the Schedules.")

   Given that operation of § 541 and § 522 (d)(5) and (6) precluded

Carvalho from having a right to receive anything beyond one dollar for her

interest in Elite, it is impossible to discern what litigation Carvalho could legitimately pursue once she received her one dollar.[5] "[T]he quintessential purpose of limiting a debtor to a dollar amount exemption is to permit the trustee to liquidate assets in the best interest of the creditors by cashing out the debtor, ***effectively removing him from considerations about how to administer the estate***." *In re Orton*, 687 F.3d at 619 (emphasis added) (quoting 11 U.S.C. § 704 (a)(1) ("[The Trustee must] collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interest of the parties . . . .")).

It is unclear what concern the non-dischargeability claims would be of the Trustee or the Estate, they were either none of his business or congruent with his obligations to safeguard the Estate.  This left potential conflicting creditor claims, but Simu was the only creditor to make any claim against the Estate, and the deadline to do so had long past.  See Claims Register in 15-00646.  Beyond Carvalho's evident redemption right in this one dollar exemption, if the Trustee was to pursue or defend litigation regarding the

---

[5] Indeed, on at least one occasion the undersigned attorney offered to give the Debtor the dollar in open court simply to extinguish the issue.

51

Estate, he could only do so to further the interests of the sole named Creditor.  The Trustee failed to identify any dispute that he could possibly engage in which would have required depletion of the Estate through the expenditure of attorney's fees.

The existence of the adversary proceeding did immediately affect the Trustee in an important manner.  It precluded the administration of the Estate pending the litigation.  In this regard, the Trustee remained bound to perform his duties, and remained subject to the requirements of the Code and Rules, for as long as the adversary case persisted.  Herein is a great flaw in the Bankruptcy Court's position, there may have been a provision for Carvalho's interest in Elite Insurance & Consulting Services, LLC to revert back to her as abandoned <u>after</u> administration of the Estate, see ECF Docket (Bank.) # 183 at 11-12, ***but discharge did not come until nearly two years after Trustee Ross made his report of no distribution***.  During this period, Ross remained fully obligated to preserve the assets of the Estate, and his *de facto* abandonment of the asset in January 2016 without notice and a hearing remained illegal.  Contrary to Judge Teel's assertion without authority in support, the Estate was not "presumed to be fully administered as of February 19, 2016".  ECF Docket # 183 at 13.  There was no discharge

order, and Simu's pending adversary proceeding fully contested the Debtor's right to a discharge and Trustee Ross' conclusions that there were no assets to administer.  Any presumption of administration was obviously rebutted by the adversary proceedings.  No party suggested anything to the contrary for almost two years following Ross's report.  Indeed, this case remains open to the present day.  Nothing excuses Trustee's inaction since February 19, 2016 and Judge Teel finally inadvertently admits as much at page 17 of his opinion.

Judge Teel now suggests the Clerk could have closed the case, but did not.  A litigant such as Simu cannot be held accountable for these kinds of unrealized contingencies.  They have to litigate the case they have, not the case it should have been.  The Clerk did attempt to unilaterally discharge the Debtor on June 27, 2016, and Simu immediately challenged the Clerk's action.  Such discharge was withdrawn by the Clerk.  ECF Docket (Bank.) # 90.  Absent a discharge, there could be no closure.  See 11 U.S.C. § 350 (a).

Trustee Ross and the Bankruptcy Court never attempt to reconcile their repeated inherently contradictory arguments that, because Simu and Carvalho each expended so much money and effort litigation over their interests in Elite Insurance & Consulting Services, LLC, the company must

53

be worthless.  ECF Docket (Bank.) # 183 at 12.  The logic employed to

reach this conclusion is breathtakingly disingenuous, and certainly in

conflict with nearly all of the evidence in this case.

> Since at least in sometime in 2013, the Debtor has been represented
> by an attorney to protect her interests in Elite Insurance & Consulting
> Services, LLC.  The attorney has been employed to write up
> dissolution proposals and to advise the Debtor in negotiations with
> Creditor Simu leading up to the split which occurred on May 1, 2014.
> Following the split, the Debtor utilized the attorney to defend against
> Simu's lawsuit, to file another lawsuit, purportedly in the name of the
> company and to institute proceedings for injunctive relief in Superior
> Court.  Simu Exhibit 22.  The amount of such attorney's fees
> expended by the Debtor are unknown, but Simu's attorney tendered a
> detailed recital of the time he expended in the same litigation which
> exceeded 500 hours.  Simu Exhibit 10.

> Even with a substantially lower attorney's fee rate of $475 per hour for
> the Debtor's attorney in the present proceeding indicated in some of
> their prior filings, see bankruptcy paper # 44-1, this demonstrates an
> approximate cost to the Debtor of $237,500 expended in defense of
> her interest in Elite Insurance & Consulting Services, LLC just in the
> Superior Court litigation alone.  Assuming that the Debtor has acted
> rationally in her expenditure of these attorney's fees to defend her
> interest in the company, I can reasonably assume that the company's
> value to her significantly exceeds the amount she expended in such
> litigation.

ECF Docket (Adv.) # 44-1 at 3.

54

**3.      Simu has established a *prima facie* case justifying removal and to sue Trustee Ross.**

This record provides indisputable facts which demonstrate a *prima facie* case that Trustee Bryan Ross has breached his fiduciary duties to Creditor Teodora Simu and she has been significantly injured as a result. This Court should now permit Simu to proceed against the Trustee in the manner that the Bankruptcy Court has repeatedly suggested.


**VIII.      Conclusion**

For these reasons, and for such other reasons as the Court finds to be good and sufficient cause, Trustee Bryan Ross should be removed, the bankruptcy reinstated, and the Estate now administered for the benefit of the creditors.   Creditor Simu should be granted leave to sue Trustee Ross for the repeated and going breaches of his fiduciary duties as a result of which, this Creditor has been indisputably injured.

Respectfully submitted, this twentieth day of February, 2018.

_____

Matthew August LeFande
Attorney at Law PLLC
4585 North 25th Road
Arlington VA 22207
Tel: (202) 657-5800
email: matt@lefande.com
Attorney for the Appellant
DC Bar #475995

56

**Certificate of Compliance with Rule 8015**

1.      This brief complies with the type-volume limitation of Fed. R. Bank. P. 8015 (a)(7)(B) because this brief contains 13,380 words, excluding the parts of the brief exempted by Fed. R. Bank. P. 8015 (a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. Bank. P. 8015 (a)(5) and the type style requirements of Fed. R. Bank. P. 8015 (a)(6) because this brief has been prepared in a proportionally spaced typeface using OpenOffice Writer in Times New Roman 14 point font.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copies of the foregoing Opening Brief and Appellant's Appendix were served via electronic filing upon the Appellee's counsel this twentieth day of February, 2018.

_____
Matthew August LeFande